Otto B. RICKS, Plaintiff,

v.

**NORFOLK & WESTERN RAILWAY COMPANY** and Brotherhood of Locomotive Engineers, Defendants.

Civ. A. No. 2999.

United States District Court
E. D. Virginia,
Norfolk Division.

April 25, 1960.

Davis & Boyd, Norfolk, Va., for plaintiff.

Hunton, Williams, Gay, Powell & Gibson, Richmond, Va., for Brotherhood.

Williams, Cocke, Worrell & Kelly, Norfolk, Va., for Railway.

HAMLEY, Circuit Judge (by designation).

This matter came on for hearing on April 14, 1960, on defendants' separate motions for summary judgment. The record consists of plaintiff's complaint, his interrogatories to defendant Brotherhood of Locomotive Engineers, and his answers to defendant Brotherhood's request for admissions; defendant Norfolk & Western Railway Company's answer and its affidavit attached to its motion for summary judgment; and defendant Brotherhood's answer, answer to plaintiff's interrogatories, request for admissions, and affidavit attached to its motion for summary judgment. The plaintiff filed no counter-affidavit prior to the day of hearing (see Rule 56(c), Federal Rules of Civil Procedure, 28 U.S.C.A.), but his counter-affidavit filed on the day of the hearing has been considered by the court.

It is alleged in the complaint that on September 30, 1958, plaintiff was in the employ of the Railway as a locomotive engineer and a member in good standing of defendant Brotherhood. On the indicated date, it is alleged, he was removed from railway service and his pay was stopped. This action was taken by the Railway, it is averred, because plaintiff reached the age of seventy years on September 8, 1958, at which age, according to a purported agreement between the Railway and the Brotherhood, the seniority rights of engineers terminate and they are not permitted to work as engineers. The agreement in question, it is alleged, was entered into on March 24, 1954, without plaintiff's prior knowledge or consent, without an opportunity to vote thereon or voice an objection thereto, and without appropriate committee action or a poll of the affected members.

This agreement reads as follows:

"Memorandum Agreement

"The Parties Hereto Agree:

"1. The seniority rights of engineers shall terminate and they shall not be permitted to work as engineers after the last day of the calendar month in which they attain the age of 70, or after May 1, 1954, whichever is later.

"2. Where the rules of the existing agreement in effect September 1, 1939, conflict herewith, this Memorandum Agreement shall apply.

"3. This Memorandum Agreement shall remain in effect until changed or modified in accordance with the provisions of the Railway Labor Act, as amended.

"Signed at Roanoke, Virginia, this 24th Day of March, 1954.

"For the Norfolk and Western Railway Company:

"/S/ H. C. Wyatt

"Vice-President and General Manager

"For the Brotherhood of Locomotive "Engineers:

"/S/ J. W. Kitts

"General Chairman"

It is alleged in the complaint that the agreement of March 24, 1954, is invalid

for the following reasons: (1) It is beyond the scope of the power and authority of defendant union under its constitution and by-laws; (2) it was executed in violation of 45 U.S.C.A. § 156; (3) no member of the Brotherhood was consulted, either singly or otherwise, and no member thereof, and particularly plaintiff, had any prior notice that such an agreement was contemplated; (4) the proposed agreement was not submitted to the members of the Brotherhood affected thereby for their approval or disapproval, this being a condition precedent to the consummation of such an agreement; and (5) the agreement was made possible by the arbitrary and capricious action of J. W. Kitts, as general chairman of the General Committee of Adjustment.

It is also alleged that the action of defendants in undertaking to enter into the agreement in question amounted to a conspiracy. The purpose of the conspiracy, it is averred, was to deprive plaintiff and other employees similarly situated (those attaining or about to attain the age of seventy years) of their rights as employees of the Railway and as members of defendant Brotherhood, without prior notice and without a voice in the matter, so as to benefit other and younger employees and members. Finally, it is alleged, the agreement in question does not require an employee to retire from the Railway and does not authorize the defendant Railway to terminate employment of plaintiff.

Under Rule 56(c), supra, a summary judgment must be entered if the pleadings, admissions, answers to interrogatories and affidavits referred to above show that there is no genuine issue as to any material fact and that defendants are entitled to a judgment as a matter of law.

As noted above, it is alleged in the complaint that the agreement of March 24, 1954, relied upon by defendant Railway in terminating plaintiff's employment, is invalid for a number of reasons. The first such reason is that it was beyond the scope of the power and authority of defendant Brotherhood, under its constitution and by-laws, to enter into the agreement. This alleged basis of invalidity, however, is a generalized statement of several specific allegations of the complaint dealing with the power and authority of the Brotherhood. Disposition of these specific allegations, therefore, will be determinative of the general allegation referred to above.

 It is alleged in the complaint that the agreement of March 24, 1954, was executed in violation of 45 U.S.C.A. § 156. The pertinent portion of section 156 reads as follows:

"Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in agreements affecting rates of pay, rules, or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice."

Written notice of the kind referred to in section 156 was given by the Railway by letter dated March 10, 1954, proposing that the rule change concerning compulsory retirement become effective not sooner than May 1, 1954. It would therefore appear that the letter provided more than the thirty-day notice required by section 156.

Plaintiff argues, however, that section 156 requires that such written notice be given at least thirty days prior to the beginning of conferences between the representatives of the Railway and the union. The conference actually began on March 22, 1954, which was only ten days after the Railway's notice.

The quoted portion of section 156 indicates that the fact concerning which notice must be given is the intended change in the agreement. This fact includes not only the modification proposed but the time when it was proposed to become effective. It follows that the thirty-

day period is to be related to the effective date of that change, which was May 1, 1954, in this case, and not to the date on which conferences were to begin. This is confirmed by the further provision in the same section that the conferences shall begin "within the thirty days provided in the notice."

The conclusion follows that the failure to give thirty days' notice prior to the beginning of conferences did not constitute a violation of section 156. Plaintiff does not suggest that section 156 was violated in any other respect. It is therefore held, as a matter of law, that the allegation that the agreement of March 24, 1954, was entered into in violation of 45 U.S.C.A. § 156 is without merit.

■ The next three reasons alleged in the complaint in support of the view that this agreement is invalid may be discussed together. These reasons relate to the facts established for the purpose of these motions that no member of the Brotherhood (other than the members of the committee referred to below) was consulted concerning the proposed agreement, no such member, including plaintiff, had prior notice that such an agreement was contemplated, and the proposed agreement was not submitted to the affected members for their approval or disapproval.

The constitution and by-laws of the Brotherhood do not require that affected members be consulted or notified before the Brotherhood may enter into such an agreement. The governing rules of the Brotherhood presently require that affected members be polled before an agreement may be entered into calling for compulsory retirement. Plaintiff concedes, however, that there was no such rule requirement in 1954 when the agreement in question was effectuated.

Apart from the specific provisions of the constitution, by-laws, and other rules of the Brotherhood, however, the Railway Labor Act, 45 U.S.C.A. § 151 et seq., imposes on the bargaining representative "the duty to exercise fairly the power conferred upon it in behalf of all those for whom it acts, without hostile discrimination against them." Steele v. Louisville & Nashville R. Co., 323 U.S. 192, 202–203, 65 S.Ct. 226, 232, 89 L.Ed. 173. Plaintiff argues that where a compulsory retirement plan is involved the fair exercise of power vested in the bargaining agent required that members affected thereby be consulted, notified, and polled.

It was held in the Steele case that wherever necessary to provide assurance that a certified bargaining representative is representing nonunion members of the craft without hostile discrimination, fairly, impartially, and in good faith, the union is required to consider requests of such nonunion members to express their views and to give them notice and an opportunity for a hearing upon the proposed action. Steele, supra, 323 U.S. at page 210, 65 S.Ct. at page 235.

Plaintiff, however, is not a nonunion member of the craft, but is a member of the Brotherhood in good standing. Moreover, there is not present in this case as there was in Steele a contract provision which differentiates between employees on a basis totally irrelevant to the working conditions dealt with in the contract. Steele involved race discrimination. Our case involves the seniority rights and compulsory retirement of all locomotive engineers without invidious distinctions or overtones. Hence, consultation, notice, and a polling of affected personnel was not required by the act. See McMullans v. Kansas, Oklahoma & Gulf Ry. Co., 10 Cir., 229 F.2d 50, 56.

■ The next reason alleged in the complaint in support of the view that the agreement here in question is invalid is that the agreement was made possible by the arbitrary and capricious action of J. W. Kitts, as general chairman of the Brotherhood's General Committee of Adjustment. The basis of this argument, as developed at the oral argument, is that the agreement was entered into without the General Committee of Adjustment being called into session to consider the proposal, and without a conference be-

tween that committee and representatives of the railroad.

The General Committee of Adjustment which represented the Brotherhood in matters pertaining to the Norfolk & Western Railway consisted of twelve members. In the spring of 1953 the personnel manager of the railroad told J. W. Kitts, chairman of that committee, that the company wanted to put into effect an agreement for compulsory retirement of locomotive engineers at age seventy. The company began to press the matter in contacts with Kitts in October 1953. Accordingly, on December 11, 1953, he wrote to all twelve members of the committee asking for their reaction and advice on this proposal. All of the members of the committee responded to this letter. Seven indicated that they were in favor of such an agreement. The other five were either opposed to it or could not fully make up their minds.

On March 10, 1954, the railroad served formal notice on Kitts that it desired to negotiate such a plan. Kitts therefore met with the company on March 22, 1954, and again on March 24, 1954. The agreement here in question was negotiated at these conferences and, on behalf of the Brotherhood, was signed by Kitts as "General Chairman."

The first paragraph of Article 26½(1) of the negotiated "Rates of Pay and Regulations" of the Railway then in effect provides that the General Committee of Adjustment will represent all locomotive engineers in the making of contracts, rules, rates, and working conditions and interpretations thereof. Section 10(a) of the 1953 Standing Rules of the Brotherhood makes it the duty of this committee to meet triennially. Paragraph (c) of the same section provides that in case of an emergency the chairman may convene the committee "when, in his judgment, it is necessary." Section 23 of the Standing Rules forbids the chairman of the committee from going before officials of the Railway for the purpose of making or giving consent to any contract "without first consulting with other members" of the committee. Section 47(c) of the Standing Rules provides that no rates of pay or revision of schedule rules shall be agreed to for enginemen "unless approved by a majority vote of the General Committee of Adjustment."

The rules and regulations referred to above require that before entering into such a contract the chairman first "consult" with the other members of the committee, and that the committee by majority vote approve the proposed revision. But while there is provision for triennial and emergency meetings of the committee, it is not specified that committee action can be taken only in meeting. It is to be observed that members of the committee are not required to consult with each other—but each individually must consult with the chairman. There being no provision to the contrary, this consultation and the vote of committee members on any contract proposal may be effectuated by correspondence between the chairman and individual committee members.

It is concluded that under the circumstances the failure to call a meeting of the General Committee of Adjustment for the purpose of negotiating and approving the contract of March 24, 1954, did not render that agreement invalid.

The allegations of the complaint relative to an alleged conspiracy are based in part upon the facts relative to the way the March 24, 1954, contract was negotiated and entered into. It is argued that the agreement was entered into in a "stealthy way" and that it was "foisted" upon "unknowing and unsuspecting members of the craft" who were adversely affected thereby.

All of these assertions, however, must be rejected in view of the fact that, as just concluded, the agreement was entered into in a manner fully authorized by the internal rules and regulations of the Brotherhood. If prior notice to and consultation with affected members was not required, it cannot be said that failure to accord such notice and consulta-

tion represents "stealthy" action, or that the resulting contract was "foisted" upon members of the craft.

 It is also argued that the Railway "demanded" the rule revision; threatened, intimidated, and placed duress upon the committee; and received the rule revision "gratuitously." The established facts, however, indicate that the Railway proceeded in exact accordance with the procedure provided in 45 U.S.C.A. § 156. Absent a showing of fraud, patent and irrelevant discrimination, or some other inherent impropriety, courts will assume that rule revisions negotiated between a union and an employer were for the mutual advantage of both.

■ Agreements between unions and employers establishing a compulsory retirement system have frequently been sustained as against such attacks as this. See Goodin v. Clinchfield R. Co., 6 Cir., 229 F.2d 578; McMullans v. Kansas, Oklahoma & Gulf R. Co., 10 Cir., 229 F.2d 50; Brotherhood of Locomotive Engineers v. Folkes, 201 Va. 49, 109 S.E.2d 392; Lamon v. Georgia Southern & Florida Ry. Co., 212 Ga. 63, 90 S.E.2d 658. Under these decisions the matter of compulsory retirement is held to be a proper subject of collective bargaining, and such agreements are held to be supported by ample consideration. They are not of such a discriminatory nature as to render them invalid.

It is concluded that the allegations of the complaint pertaining to an alleged conspiracy fail to provide a foundation for the setting aside of the agreement of March 24, 1954.

Finally, it is alleged in effect that if the agreement is valid it nevertheless does not authorize the termination of plaintiff's employment with the Railway, but only his employment as a locomotive engineer. The fact is, however, that plaintiff's rights of employment with the Railway are secured only under agreements which in his case prohibit further employment upon reaching the age of seventy years.

The motions of Norfolk & Western Railway Company and Brotherhood of Locomotive Engineers for summary judgment will be granted, and an appropriate order to this effect is being entered.